IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MELISSA D. TACKETT,            )
                               )
            Plaintiff,         )
                               )
                               ) Case No. CIV-18-113-RAW-KEW
                               )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
                               )
            Defendant.         )

**REPORT AND RECOMMENDATION**

Plaintiff Melissa D. Tackett (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. She has a college education and has worked in the past as a school cook and a production worker. Claimant alleges an inability to work beginning on November 19, 2010, due to limitations resulting from asthma, osteoarthritis, compression fracture of T-12 vertebra, and obesity.

## Procedural History

On March 10, 2016, Claimant filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 27, 2017, the Administrative Law Judge("ALJ") Lantz McClain conducted a

video hearing from Tulsa, Oklahoma, and Claimant appeared in Poteau, Oklahoma.  On April 20, 2017, the ALJ entered an unfavorable decision.  Claimant requested review by the Appeals Council, and on March 15, 2018, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly consider her subjective complaints of pain; (2) failing to include all her limitations in the RFC; and (3) finding that there were jobs existing in the national economy in significant numbers that she could perform based upon her RFC.

## Evaluation of Subjective Complaints of Pain

In his decision, the ALJ found Claimant suffered from severe impairments of compression fracture of the T12 vertebra, history of right shoulder and elbow pain, bilateral carpal tunnel syndrome, mild osteoarthritis of the hands, mild degenerative joint disease of the knees, asthma, hypertension, and obesity.  (Tr. 16).  He

4

determined Claimant could perform light work with additional limitations. In so doing, the ALJ found Claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk at least six hours in an eight-hour workday; and sit at least six hours in an eight-hour workday. Claimant should avoid work above the shoulder level, and she could perform work requiring no more than frequent use of the hands for handling or fingering. Claimant "should avoid concentrated exposure to such things as dust or fumes, heat or cold (the claimant should work in an environment like an ordinary Walmart)." (Tr. 17).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of arcade attendant, parking lot attendant, cashier two, and ticket taker, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 21). As a result, the ALJ concluded that Claimant was not under a disability from November 19, 2010, her alleged onset date, through March 31, 2015, the date last insured. (Tr. 22).

Claimant contends the ALJ improperly considered her complaints of pain. Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017), which became effective for decisions issued on or after March 28, 2016, and superseded Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996), provides a two-step framework for an ALJ to evaluate a claimant's subjective complaints of pain

5

or other symptoms.[2] The ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. He then will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*. As part of the second step analysis, the ALJ should consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

In addition to considering the entire case record, the ALJ will utilize the relevant factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. These factors include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage,

---

[2] Claimant couches the argument as a credibility issue, referencing a three-pronged test from *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005). *Hackett* incudes a credibility discussion, but it does not include the three-pronged test referenced by Claimant. In any event, SSR 16-3p eliminated use of the term "credibility" and set forth a two-part test. Because the ALJ issued his decision on April 20, 2017, he applied the two-part test established by SSR 16-3p.

effectiveness, and side effects medication; (5) treatment for pain or symptom relief, excluding medication; (6) measures other than treatment used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations. *Id*. at *7-8.[3]

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." SSR 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

---

[3] The Tenth Circuit has noted that the analysis under SSR 16-3p is similar to the analysis for pain and credibility in *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987), and it has continued to utilize prior decisions under the *Luna* standard in reviewing an ALJ's pain and symptom analysis under SSR 16-3p. *See Paulek v. Colvin*, 662 Fed. Appx. 588, 593-94 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p lists similar factors to those utilized in *Luna*).

7

As part of his evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process and the requirements under 20 C.F.R. § 404.1529. (Tr. 18). He summarized Claimant's testimony in detail, including that she suffered from asthma and migraine headaches from chemical smells and smoke, that temperature extremes affected her breathing, she suffered from arthritis and fractured her back and was unable to bend and experienced pain all day long, she had pain from arthritis in her hands, shoulders, and elbows and her toes fell asleep on a daily basis if she sat too long. Claimant could stand for fifteen minutes, her pain medication eased her pain but did not stop it, she went shopping at Walmart with her husband for thirty minutes, she occasionally attended church but was bothered by perfumes, her breathing was her worst problem and she has a meter to monitor it that she uses daily, her breathing issues affected her ability to do household chores, and she suffered disturbed sleep. (Tr. 18). The ALJ determined Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" *Id*.

The ALJ then detailed the medical evidence and other evidence in the record, noting it was not entirely consistent with Claimant's statements concerning the intensity, persistence and limiting effects of her reported symptoms. He acknowledged the medical evidence from October 7, 2010, which indicated Claimant's arthritis in her right hand ("[j]oint examination showed firm to

8

bony enlargement of the right second, third and fourth PIPs"), but referenced the findings that there was no active synovitis or rheumatoid nodules, no periungual erythema, and her examination was negative for tophi in her right hand and that her left hand did not reveal "osteoarthritic-like changes." Claimant had good range of motion of her shoulders, elbows, wrists, hips, knees, and ankles. Her neurological examination was intact and symmetric. Claimant's radiological examinations showed arthritic changes in the left shoulder joint, post vertebroplasty changes with moderate compression fracture of T12 and osteopenia consistent with osteoporosis of the thoracic spine, minimal spondylitic changes of the lumbar spine, and X rays showed minimal anterior spondylitic changes in the mid-thoracic spine. The ALJ concluded that this evidence did not support the severe nature of Claimant's complaints, nor did it contradict any of the limitations included in the RFC. (Tr. 18-19, 263-71).

The ALJ discussed Claimant's evaluation for osteoporosis in April of 2012, wherein she was noted to have completed two years of Forteo with dramatic improvement, 13% overall. Claimant was not taking medication, was somewhat compliant with taking vitamin D, but had not been good about exercising. (Tr. 19, 343-44). The ALJ also discussed Claimant's well woman visit in April of 2013, wherein she appeared to be in no acute distress. (Tr. 19, 377-82). In October of 2013, Claimant returned complaining of left

9

ankle and heel pain, which she attributed to walking across campus three days earlier. She partially attributed it to her shoes, but she did not want to stop wearing them. Claimant's ankle range of motion was normal. Although there was tenderness on palpation of the left lateral heel, pain was not elicited by active plantar flexion. Foot motion was normal, and motion of the foot did not result in pain. Claimant was assessed with plantar fasciitis of the left foot, and prescribed treatment of routine non-steroidal anti-inflammatory drugs. (Tr. 19-20, 374-76). The ALJ further discussed an X-ray of Claimant's right elbow from April of 2015, which showed minor arthritic changes, with no fracture. (Tr. 20, 304). He again noted Claimant's examination findings did not support the severity of her complaints and were not inconsistent with the RFC. (Tr. 20).

The ALJ's evaluation of Claimant's pain or other symptoms reveals that he relied upon the appropriate factors in assessing Claimant's statements. The Court finds no error in the ALJ's assessment of Claimant's pain and other symptoms.

### RFC Determination

Claimant also contends the ALJ failed to include all her limitations in the RFC. Specifically, Claimant asserts the RFC should have included limitations associated with her foot pain. Claimant argues the doctor's recommendation that her foot pain required rest and massage is at odds with the ALJ's determination

10

in the RFC that Claimant can stand for at least six hours in an eight-hour workday.[4]

The ALJ's decision demonstrates he did not simply disregard Claimant's complaints of foot pain when assessing the RFC. As discussed with respect to the ALJ's evaluation of Claimant's pain and other symptoms, the ALJ specifically discussed Claimant's complaints of foot pain. (Tr. 18-20). Claimant suffered foot pain that was largely the result of her wearing a certain type of shoe that was not good for her feet, but that Claimant indicated to her treatment provider that she did not want to stop wearing the shoes. There was no stiffness of the foot and "[n]o shooting non-joint foot pain and non-joint foot pain d[id] not worsen with weightbearing." It was noted the non-joint foot pain was "relieved by rest and some with massage." (Tr. 20, 375). Thus, contrary to Claimant's assertion, there is no indication from the record that Claimant's treatment provider required rest and massage for her foot pain.

---

[4] As part of her argument that the ALJ failed to include limitations in the RFC with respect to her foot pain, Claimant also appears to raise the argument that the ALJ failed to fully develop the record. However, this argument is without merit, as Claimant was represented at the administrative hearing by counsel, who never requested a consultative examination and who affirmed the record was complete and that there was no objection when asked by the ALJ. (Tr. 28-29); see also Hawkins, 113 F.3d at 1167 ("[T]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.").

The ALJ also noted that pain was not elicited by active plantar flexion, there was tenderness of the left lateral heel on palpation, the plantar fasciitis test elicited pain, there was no swelling or erythema in the feet and no tenderness on palpation of the dorsal aspect of the foot.  He further discussed there was no tenderness of the plantar aspect of the foot on palpation, foot motion was normal, and no pain was elicited by motion of the foot or motion of the plantar aspect of the foot.  Claimant was assessed with "[p]lantar fasciitis of the left foot," and her recommended treatment was "[r]outine NSAIDS as discussed x 2 weeks."  (Tr. 20, 376).

The ALJ's decision demonstrates that he did not simply disregard Claimant's foot pain when assessing her RFC.  The record shows the ALJ considered Claimant's foot pain in evaluating her pain and symptoms and in assessing her RFC. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").  As discussed herein, substantial evidence supports the ALJ's RFC assessment.

### Step Five Analysis

Claimant further contends that the representative occupations provided by the VE during questioning by the ALJ were precluded by the limitations included by the ALJ in the hypothetical question

12

posed to the VE. Specifically, Claimant contends that because of possible exposure to environmental agents, *i.e.*, cleaning agents, fumes, heat and cold, she could not perform the representative occupations of arcade attendant, parking lot attendant, cashier II, or ticket taker identified by the VE in response to the ALJ's hypothetical question.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The hypothetical question the ALJ posed to the VE included all the limitations ultimately adopted by the ALJ in the RFC. (Tr. 17, 48-55). The VE testified that with such limitations, Claimant could perform the jobs of arcade attendant, parking lot attendant, cashier II, and ticket taker. (Tr. 49, 53). Claimant contends that the VE testified the four jobs were unavailable.

13

The ALJ's RFC included the limitation that Claimant "should avoid concentrated exposure to such things as dust or fumes, heat or cold (the claimant should work in an environment like an ordinary Walmart)." (Tr. 17). The ALJ included identical wording in the hypothetical posed to the VE. (Tr. 49, 53). Although Claimant's attorney asked the VE several questions, all the questions posed by Claimant's attorney involved Claimant's having no exposure to dust or fumes and heat or cold. (Tr. 50-55). For example, the VE testified an arcade attendant would "occasionally" and "not very often" be required to vacuum and "could be" in contact with cleaning agents or fumes. It was only when Claimant's attorney changed the hypothetical to an individual who "cannot be around such fumes," that the VE indicated the individual could not perform the job. (Tr. 50-51). Claimant's attorney continued with the same type of questioning for the jobs of parking lot attendant (Tr. 51-52), ticket taker (Tr. 54), and cashier II (Tr. 54-55).

The RFC adopted by the ALJ and posed to the VE did not limit Claimant to "no contact" at all with dust or fumes and heat or cold. Claimant was to "avoid concentrated exposure to such things as dust or fumes, heat or cold (the claimant should work in an environment like an ordinary Walmart)." (Tr. 17, 48-49, 52-53). The ALJ was not bound by the VE's response to questions posed by Claimant's counsel including impairments not accepted as true. *Talley*, 908 F.2d at 588.

The Court finds no error in the ALJ's RFC assessment. The RFC adopted by the ALJ was supported by substantial evidence and those limitations found to exist by the ALJ were included in his hypothetical question to the VE. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 11th day of September, 2019.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma